UNITED ORDER OF GOOD SAMARITANS *v.* ACKER.

4-4599

Opinion delivered April 12, 1937.

*J. S. Abercrombie,* for appellant.

*Madrid B. Loftin* and *Joe B. Norbury,* for appellee.

GRIFFIN SMITH, C. J. King David Acker, husband of appellee, died February 22, 1934. On September 13, 1932, he became a member of Golden Sun Colony No. 248, United Order of Good Samaritans. Valid certificates in the order entitled members to a burial credit of $100 "as per law." The contract contains this provision: "If your dues are not paid before the tenth of the month due, you are automatically suspended, and should you pay up, neither the local nor supreme colonies are liable to you

or your beneficiary should sickness or death occur before the expiration of thirty days.''

It is alleged by appellant that appellee's intestate became automatically suspended prior to the time of his death because January dues were not paid until February 7. Appellee claims that all premiums were paid, and that the certificate was in full force. A jury was waived, and the case was tried before the circuit judge, who found for the plaintiff.

Appellee testified that she paid all premiums on the certificate and that such payments were made to Jane Edwards, appellant's financial secretary; that the dates of payments were marked on receipt card; that the card was a printed form on which each month of the year appeared in sequence, with designated space for entry of amount paid, date of payment, and to whom paid. The card used in 1933 was introduced in evidence, showing indorsements to and including December, followed in each instance by the initials ''J. E.'' There is this direction: ''See that the Worthy Financial Secretary receipts you properly by putting the date of payment and his or her initials opposite the amount paid.'' Appellee further testified that when she presented the 1933 card for credits, in 1934, she paid for two months.

Jane Edwards testified that the February dues were not paid, and that she did not make the entry on appellee's card; that appellee made two payments at one time; that January payment was not made, and that December payment was made in February. Ida Mar Boswell, secretary to the defendant, testified from a card record, showing that January dues were paid to her office on January 20. On cross-examination she said that January payments were made on February 7, and that Jane Edwards was the collector. This testimony is in conflict with that of Jane Edwards. It is also in conflict with the regular indorsement or entry on the card, which shows that payment for December was apparently made December 10. Although appellant's contract directs members to see that the dates of payments are indorsed on receipt card, the financial secretary, whose duty it was to make the entries, did not in all cases show such dates.

Because of this failure, there is no properly authenticated receipt record to compare with appellant's contentions that payments were not made in a timely manner.

If the December dues were paid, as shown by receipt card bearing the initials of appellant's financial secretary, and if January and February dues were paid, then February payment was not delinquent on the 7th, for it could be received at any time before the tenth. Acceptance of dues for January, even though paid in February, would relate back to January 1. Therefore, when two payments were made on February 7, one credit was retroactive to January. This payment could have been made without forfeiture at any time before the tenth, but if paid at all, the full month's obligation would be discharged, and the suspension which automatically became effective on the 10th expired on February 10. If appellee's testimony is believed, payment for February was made on February 7, prior to expiration of suspension on February 10. There was testimony from which the trial court could have found upon either theory.

A second ground for reversal urged by appellant is that appellee did not give notice of the death of insured until an unauthorized undertaker had been employed to bury the deceased. Appellant's exhibit "B" is a copy of proclamation mailed to members on November 30, 1933. It provides that: "In the event a member or a beneficiary sees fit to employ an undertaker not designated as herein provided, then the credit as outlined above does not apply, and no liability shall attach against the Order." Ida Mar Boswell testified that she mailed a copy of this proclamation to the home address of King David Acker, as shown by an office card. Appellee testified that she received all of her husband's mail, and that no such proclamation reached him. She also said that on the day following her husband's death she went to appellant's office, where she was told that because the undertaker then holding Acker's body would require $25 before releasing it, appellant "couldn't do anything about it." Appellee also testified that while discussing possession of the body she was told that the policy or certificate was in force.

From this and other conflicting testimony, the trial court found for appellee. There was no error of law in so doing.

Affirmed.